IN THE COMMONWEAH COURT OF PENNSYLVANIA

Paul Ablaza,                              :
                                          :
                    Petitioner            :
                                          :
              v.                          : No. 489 C.D. 2024
                                          : Submitted: March 4, 2025
City of Philadelphia                      :
(Workers' Compensation                    :
Appeal Board),                            :
                                          :
                    Respondent            :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MATTHEW S. WOLF, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: March 26, 2025


          Paul Ablaza (Claimant) petitions for review from an April 5, 2024 decision and order of the Workers' Compensation Appeal Board (Board), affirming a decision and order of a Workers' Compensation Judge (WCJ). The WCJ's decision and order denied Claimant's petitions for reinstatement of workers' compensation benefits (Reinstatement Petition) and for penalties (Penalty Petition) (collectively, Petitions) against the City of Philadelphia (Employer or City) pursuant to the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1; 2501-2710.

## Background

Claimant is employed by Employer as a police officer. Claimant tested positive for COVID-19 (COVID) on November 1, 2021, and stopped working. He notified his supervisor, Lieutenant Tracey Thomas, that he tested positive for COVID and that he believed that it was work related. WCJ's Decision, Finding of Fact (F.F.) No. 5(a), 5(c), (e). After Claimant reported the diagnosis, he received wage continuation benefits, referred to as "E-time," from November 2021, to January 2022. *Id.*, F.F. No. 2. In January of 2022, Claimant ceased receiving E-time but received 60 days of benefits pursuant to the COVID-19 Enforcement Officer Disability Benefits Act (Act 17).[2] *Id.*, F.F. No. 5(g). Thereafter, Claimant began to exhaust his sick time. WCJ's Decision, F.F. No. 2.

On October 20, 2022, Claimant filed the instant Petitions, alleging that Employer "unilaterally terminated benefits in January 2022 after accepting the claim for C[OVID] with payment of wages in lieu of benefits as a matter of law." Certified Record (C.R.) at Nos. 2, 3. The matter proceeded before the WCJ.

## Claimant's Evidence

Claimant testified on his own behalf at a hearing before the WCJ. Claimant stated that in October of 2021, he was working as the Sergeant of Detectives. During that time, Employer was experiencing a staffing shortage due, in part, to illness. In order to assist Employer, Claimant worked extra hours and in different divisions around the City of Philadelphia. WCJ's Decision, F.F. No. 5(a)-(b).

---

[2] Act of April 29, 2020, P.L. 118, No. 17, 35 Pa.C.S. §§57a01-02.

In late October of 2021, Claimant developed symptoms including difficulty breathing, chills, fever, headaches and an inability to focus. As noted above, Claimant tested positive for COVID on November 1, 2021, stopped working, and notified his supervisor that he believed his COVID was work-related. WCJ's Decision, F.F. No. 5(c), 5(e).

When a police officer working for Employer claims he or she has suffered a work injury, they complete a form commonly identified as "COPA II."[3] Claimant had several prior work injuries and understood that a COPA II form had to be completed in order to obtain injured on duty benefits. Claimant did not, however, complete a COPA II form when he tested positive for COVID because "the policy at that time was that anyone who tested positive for C[OVID] was carried on [E]-time until they recovered." WCJ's Decision, F.F. No. 5(f). A COPA II form was not required for E-time benefits. *Id.*

Claimant indicated that while he was out of work, he was initially paid his full salary via E-time. E-time stopped in January of 2022, and Claimant then received 60 days of pay under Act 17. Starting in March of 2022, Claimant began depleting his sick time. When Claimant learned that E-time was ending, he did not ask for a COPA II form or try to establish the work-relatedness of his illness. WCJ's Decision, F.F. No. 5(g).

Claimant returned to restricted work in May of 2022. At the time of his testimony, he was limited to administrative duties and could not perform field work. He continued to suffer from chronic fatigue, brain fog, inability to focus, joint pain, weakness, and shortness of breath. *Id.*, F.F. No. 5(h).

---

[3] "COPA II" is shorthand for "City of Philadelphia Accident, Injury, Illness Form." *See* Deposition of Barry Scott, Certified Record No. 19 at 7.

**Employer's Evidence**

In its defense, Employer offered the August 15, 2022 deposition testimony of Barry Scott, its Deputy Finance Director for Risk Management (Risk Management) and its Risk Manager (Mr. Scott) and the August 25, 2022 deposition testimony of Lieutenant Donald Lowenthal, the Philadelphia Police Department's (Department) Infection Control Officer (Lieutenant Lowenthal).[4]

Mr. Scott testified that he has served in his position since 2003. Risk Management administers several different types of disability benefits to Department police officers, including workers' compensation, Heart and Lung benefits,[5] and benefits pursuant to Act 17.[6] When Department police officers believe they have sustained a work injury, they report the injury to their supervisor and the supervisor fills out a COPA II form. From there, the supervisor and the Department's third-party administrator, PMA Management Corporation (PMA), investigate the alleged injury, and PMA determines if the claim is compensable. In turn, PMA notifies the employee whether their claim has been accepted or denied and what, if any, benefit they are to receive.

On March 23, 2020, following a stay-at-home order issued by the Employer, Risk Management, along with other members of City government, began "addressing how to protect City workers from contracting COVID as well as ways

---

[4] Mr. Scott's deposition can be found in the Certified Record at No. 19. Lieutenant Lowenthal's deposition can be found in the Certified Record at No. 20.

[5] The Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*. 53 P.S. §§637-638, provides public safety officers with their full salary while they recover from temporary, work-related ailments.

[6] Act 17 provides that a person who is eligible for Heart and Lung Act benefits who is temporarily incapacitated from performing his or her duties following a COVID diagnosis may receive up to 60 days of Heart and Lung Act benefits.

to minimize the spread in the community as it impacted City operations." Deposition of Barry Scott at 10. Mr. Scott related that in the early days of COVID, Risk Management did not have a written policy for police officers who believed that they contracted COVID at work. Furthermore, Mr. Scott testified, at no time throughout the pandemic was there a Risk Management written position that precluded police officers from making claims if they believed they contracted COVID at work.

With regard to E-time, Mr. Scott then explained that "E[-]time, or excused time, is a timekeeping tool that - - which enables an employee to continue to receive their salary when they can't or they're not at work for whatever reason." Deposition of Barry Scott at 12. To Mr. Scott's knowledge, employees on E-time historically continued to receive their regular salary and accrue benefits and did not deplete their personal leave time. From Risk Management's perspective, if a police officer received E-time because of COVID, it was not an acknowledgment that he or she had contracted COVID at work; rather

> [i]t was meant to signify that [Employer] was not trying to punish these officers and that it was - - so that they were not losing anything by being in this status, that this was, you know, a situation we were not expecting but we were looking to have a situation where, you know, folks who succumbed to this condition were not - - weren't financially penalized by the condition.

*Id.* at 13. Mr. Scott emphasized that E-time was not sick leave or personal time off but was a "sort of an administrative timekeeping category." *Id.* at 14. Mr. Scott confirmed that if a police officer filled out a COPA II form and the investigation determined that he or she did contract COVID at work, they would not be put on E-time but would be placed on a disability benefit under the employee disability program.

5

Mr. Scott testified that in January 2022, Employer became aware that several Department police officers who claimed disability due to long-haul COVID were still out of work and receiving E-time. Employer decided to transition the officers from E-time to Act 17 benefits. Mr. Scott indicated that once their Act 17 benefits ceased, the officers would have to use their accrued sick time if they did not return to work. It was after this change that many of these officers filed for workers' compensation benefits although they had not previously sought disability benefits from Employer related to their COVID diagnoses.

On cross-examination, Mr. Scott acknowledged that he is not a Department employee and that Risk Management "provides direction to departments across the City in order to minimize the risk to City employees from hazards on the job[,]" but it does not have "a managerial authority to control the actions taken in a particular department." Deposition of Barry Scott at 21. Mr. Scott further acknowledged that in 2020 and 2021, Risk Management was not actively involved in contact tracing "which might have identified cases in the Department." *Id.* at 25. Finally, Mr. Scott indicated that he was never advised that Department supervisors were telling officers that they could only receive E-time for COVID and that COPA II forms were unnecessary.

For his part, Lieutenant Lowenthal testified that he had been serving as the Department's Infection Control Officer since 2007. He explained that prior to March 2020, he was involved in coordinating care and testing of police officers who had bodily fluid exposures. In March 2020 the nature of his position changed from handling bodily fluid exposures to "nothing but C[OVID]." Deposition of Lieutenant Donald Lowenthal at 10. Lieutenant Lowenthal became responsible for communication with Department officers who may have been infected with COVID.

6

Lieutenant Lowenthal described various COVID policies implemented by Employer beginning in March 2020. While Lieutenant Lowenthal did not write the policies, he did interpret them and answer questions. Lieutenant Lowenthal indicated that when asked by Department supervisors how to report an employee who was out with COVID on the Daily Activity Report, he indicated that the policies provided that those employees should be listed as being on E-time, regardless of whether the COVID was work-related or non-work-related. Further, he related that if a Department supervisor asked him whether they should fill out a COPA II form for an officer who claimed to have contracted COVID from work, he would advise the supervisor to do so. Lieutenant Lowenthal acknowledged that the first time a Department policy indicated that a COPA II form should be completed when an officer believed he or she contracted COVID at work was in July 2022.

**WCJ's Decision**

Based on his review of the evidence, the WCJ found that Employer never accepted liability for Claimant's alleged COVID injury under the Act. Further, the WCJ determined that the payments of E-time did not constitute payments in lieu of compensation, and that Employer was not estopped from denying workers' compensation benefits. Finally, the WCJ held that Employer did not violate the Act by stopping E-time payments or by failing to pay workers' compensation benefits once the E-time expired. WCJ's Decision, F.F. No. 11. In reaching this decision, the WCJ found the testimony of Mr. Scott and Lieutenant Lowenthal credible and adopted their testimony as fact. *Id.*, F.F. No. 12. The WCJ also found Claimant credible that he reported his COVID diagnosis to Employer and

7

that he was paid E-time followed by Act 17 benefits and thereafter used his accrued sick leave. *Id.*, F.F. No. 13.

The WCJ cited this Court's decision in *Kelly v. Workmens' Compensation Appeal Board (DePalma Roofing)*, 669 A.2d 1023 (Pa. Cmwlth. 1995), to support his adjudication. The *Kelly* court defined payments in lieu of compensation as "any voluntary or informal compensation, apart from the Act, paid with intent to compensate for a work-related injury . . . . It is the *intent* of the payment, not the receipt thereof, which is relevant." WCJ's Decision, F.F. No. 11 (quoting *Kelly*, 669 A.2d at 1026 (emphasis in original)). Unlike the payments made by the employer in *Kelly*, the WCJ reasoned that the E-time payments in this case were not made with the intent to compensate Claimant for a work-related injury. The WCJ reasoned:

> In our case, [Employer] never expressed responsibility for Claimant's C[OVID]. The use of E-time was not intended to replace workers' compensation and was not an acknowledgement [ ] that the C[OVID] was work-related. Most significant in this determination is the fact that E-time was paid to all officers based on the diagnosis of C[OVID], and [was] not dependent on whether the diagnosis was work-related or not. The written policies do not distinguish between C[OVID] cases that are work[]related or non-work-related. Rather, [E-time] was paid for all C[OVID] absences. E-time was paid to some based on just exposure, and the recipient did not even need to contract the illness. Moreover, E-[time] payments were made without the necessity of [ ] following the City of Philadelphia's standard internal procedure of reporting a work-related injury. City employees must notify their supervisor and complete a COPA II form to report a work injury. Claimant was aware of this COPA II procedure, but never completed the form. If Claimant's illness was not reported or processed as work-related, then how can the City's E-time payments be intended as an acknowledgement of a work-related injury? In short, the

8

> E-time was paid with no intent to acknowledge that the illness was work-related.

*Id.*

The WCJ similarly denied Claimant's Penalty Petition. Because Employer did not violate the Act by stopping Claimant's E-time payments or by failing to issue workers' compensation payments after Claimant exhausted his E-time payments and Act 17 benefits, the WCJ concluded that Claimant failed to sustain his burden of proving he was entitled to penalties.

Claimant appealed and the Board affirmed. Claimant now appeals to this Court.[7]

## DISCUSSION

On appeal, Claimant argues that the E-time payments he received were made in lieu of compensation for his work-related COVID, that Employer's payment of E-time was an admission of liability, and that Employer's payment of E-time benefits estopped it from denying liability under the Act. Claimant further argues that the WCJ erred in denying his Penalty Petition because Employer accepted liability for a work-related injury, and Employer violated the Act by unilaterally terminating payments for his work-related injury. In the recent case of *Brown v. City of Philadelphia (Workers' Compensation Appeal Board)*, 330 A.3d 12 (Pa. Cmwlth. 2025), this Court performed an exhaustive analysis of the identical issues

---

[7] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

9

raised here, and issued a well-reasoned opinion affirming the Board. *See also Clarke v. City of Philadelphia (Workers' Compensation Appeal Board*) (Pa. Cmwlth., No. 508 C.D. 2024, filed January 17, 2025); *Tymes v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 464 C.D. 2024, filed January 29, 2025).[8]  For the reasons set forth in *Brown, Clarke*, and *Tymes*, we conclude there was no error of law or abuse of discretion in denying Claimant's Petitions.

Accordingly, the order of the Board is affirmed.

MICHAEL H. WOJCIK, Judge

Judge Dumas did not participate in the decision of this case.

---

[8] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Ablaza,                           :
                                       :
                    Petitioner         :
                                       :
          v.                           : No. 489 C.D. 2024
                                       :
City of Philadelphia                   :
(Workers' Compensation                 :
Appeal Board),                         :
                                       :
                    Respondent         :

O R D E R

AND NOW, this 26th day of March, 2025, the April 5, 2024 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge